## STEVENS VS. BROOKS.

*Action in behalf of plaintiffs and others similarly interested—Rights and liabilities of persons not named—How they become parties.—Pleading.—Amendment of pleading: Where to be made.*

1. Where the plaintiffs named in a complaint sue in behalf of themselves and of all others similarly interested, such other persons are not thereby made strictly parties to the suit; nor are they entitled to any benefit from a judgment in favor of the plaintiffs, nor liable for any part of the expenses of the litigation, unless they elect to come in as parties.

2. Such other persons *may* come in under the judgment, and take the benefit of it, or show it to be erroneous, or entitle themselves to a rehearing; and if they neglect to do so after reasonable notice, the court will protect the defendants and parties named from any further litigation in respect to the same fund or subject matter—especially any tending to disturb the rights of parties as fixed by the judgment.

3. One who elects to come in, etc., must apply for an order making him a party; and before it is granted, a reference should be made to a commissioner to examine and report as to his identity and interest.

4. An allegation that B. had a like interest with the parties named as plaintiffs in such an action, and that, after its commencement, he promised "in case he should be protected in his interests correspondingly with the other plaintiffs and parties interested, by the said action and meas-

ures begun and taken, he would pay his share of the expenses incident thereto," does not show a right of action on such promise, without a further allegation that B. had actually become a party to such suit; because it does not show either a *consideration* for the promise or a fulfillment of the *condition* therein expressed.

5. The complaint in this action (*vide infra*) *held* to be only for the recovery of money, and not sufficient to authorize a judgment in ejectment, or one affirming plaintiff's right to redeem land.

6. Applications to amend pleadings should not be addressed to this court in actions not commenced here.

APPEAL from the Circuit Court for *Dane* County.

The complaint avers in substance the following facts: In January, 1837, one Noonan sold and conveyed to Field and Ford, then residents of Chicago, Ill., an *undivided fourth* interest in certain lands (about 1,400 acres) in Dane county, for $3,080; and took from the grantees, on the same day, a bond and a mortgage of the premises, to secure the purchase money. Field and Ford shortly thereafter deeded back said premises to Noonan for a good and sufficient consideration. Afterwards, in May, 1837, Noonan sold and conveyed to Field and Ford the *entire* interest in portions (constituting in the aggregate about one-fourth) of the same lands included in his first deed, for the same consideration there named, and took back a bond and a mortgage of the premises (dated June 2, 1837) as security for over $2,000 of the purchase money. A statutory foreclosure, so-called, of said mortgage was attempted by Noonan, and at the sale thereunder Noonan became purchaser of the whole premises, and received a sheriff's deed thereof dated September 10, 1838, which was recorded on the 12th of the same month; but the mortgage did not contain any power of sale, and such pretended foreclosure, sale and deed were void. In June, 1846, Noonan conveyed by warranty deed, 160 acres of land to the defendant, *Brooks*, being a part of the premises described in both the above named conveyances of January

and May, 1837, from Noonan to Field and Ford, and in the mortgages executed by the two latter. About the same time, Noonan conveyed other portions of said premises, by warranty deeds, to many other persons; and under and shortly subsequent to said conveyances, said grantees, including the defendant, went into possession of the premises conveyed to them respectively. By virtue of said conveyances, it is alleged, said grantees acquired an interest in said mortgage of June, 1837, then held by Noonan, proportionate to the quantity of the mortgaged premises conveyed to them respectively. In 1856, or early in 1857, Noonan assigned in writing said bond and mortgage of June, 1837, to one Roys, who thereupon commenced an action in the Dane circuit court to foreclose the same. About the same time Noonan brought an action in the same court upon the bond of Field and Ford made to him in January, 1837, and attached in that suit the interest of Field and Ford in the lands covered by the June mortgage. On the 29th of June, 1837, Field conveyed to Ford all his interest in the property conveyed to them by Noonan in May preceding. In November, 1842, Ford was duly declared a bankrupt by a decree of the U. S. District Court for Illinois; and in October, 1856, his assignee in bankruptcy duly sold at public sale as the property of said Ford, the lands covered by Noonan's deed of May, 1837, and the same were purchased at such sale by one Rogers, one James and one Cobb, then residents of Chicago, Ill. Subsequently, and about the time of commencing the injunction suit hereinafter named, plaintiff, at the request of all or a part of the plaintiffs named in said injunction suits, purchased the interest of Rogers and James, in his own name, but for the benefit of the plaintiffs in said suit making such request, " and such other of the plaintiffs in said suit and others interested as should contribute thereto;" and one Farwell, in like manner and for a like purpose, pur-

chased the interest of Cobb, which has become vested in the plaintiff. At and after the time of such purchase, it was claimed by Roys that the sale in bankruptcy did not pass any interest, Ford's interest having been sold to his brother prior to the proceedings in bankruptcy, and by the heirs of said brother conveyed to one Pinney. In May, 1857, the plaintiff *Stevens*, and one Lewis, his law partner, brought an action in the circuit court for Dane county, against Noonan, Roys and others, in favor of Farwell, Roby and others named, and many others not named, as plaintiffs, to enjoin said Noonan, Roys, etc., from proceeding with the two actions commenced by them severally as aforesaid. " Said parties plaintiff, named and not named in said action, were all and the only parties who claimed an interest in said mortgage dated June 2, 1837, and in the premises covered thereby, by virtue of deeds of conveyance made by said Noonan. The question involed in said action was one of a common or general interest to all of the parties named and not named as plaintiffs in said action, and it was impracticable to ascertain, except by suit, the nature and extent of the interest " of each. " Said action was brought by said parties plaintiff named, for and in behalf of themselves and the said parties not named, being all those interested in said question not made defendants." A temporary injunction was granted in the action, and issue was joined therein, but it had never proceeded to final judgment owing to the death of Mr. Roys. Said tempory injunction has never been vacated but is now in force. Subsequent to said injunction suit and prior to the death of said Roys, to-wit, in May, 1857, said *Stevens* and Lewis commenced an action in said circuit court " in behalf of the same parties plaintiff in said injunction suit, alike those named and those not named," against Field, Ford, Noonan, Roys and others, for the foreclosure of said mortgage of June 2, 1837; after the death of Roys, the

action was revived against his legal representatives; and the same proceeded to judgment of foreclosure and sale; and at the sale, duly made, the premises were struck off to *Stevens*, the plaintiff herein, for the amount found due on the mortgage, and a sheriff's deed was executed to him the same day, April 12, 1862. The property so sold is worth $20,000. Prior to said foreclosure sale, plaintiff had expended in and about his said purchase of James and others at Chicago, and the several actions above mentioned, about $1,780, which moneys were expended in good faith "for the benefit of said parties plaintiff named and not named in said foreclosure suit;" and said *Stevens* and Lewis's services in the conduct of said several suits and matters aforesaid, are worth $900, and Lewis has transferred his interest therein for value to the plaintiff, and said sum of $900, together with said sum of $1,780, with interest on the latter, is due plaintiff, except as hereinafter stated. Shortly after said foreclosure sale, plaintiff caused a statement of said expenditures, charges for services, interest, etc., to be prepared, and the amount to be assessed upon the several parties plaintiff named and not named in said foreclosure action, in proportion to the value of the respective pieces of property held by each, the title to which was thereby perfected; and upon the basis of said statement and assessment he has settled with several of said parties plaintiff, and received from them a large proportion of the amount due as aforesaid to him. Upon said assessment the amount to be paid by defendant because of the land conveyed to him by Noonan is about $500, with interest from April 12, 1862. Said defendant was not named as a party in said injunction and foreclosure actions; but soon after they were commenced, he was informed of the same and of the other measures taken to overcome the claims of Roys, etc., and he agreed with plaintiff "that if he (defendant)

should be protected in his interests correspondingly with the other plaintiffs and parties interested, by the said action and measures begun and taken, he would pay his proportionate share of the outlays and expenses necessary thereto. After the above mentioned statement and assessment was made, defendant claimed that the proportion assessed against him was too large, and agreed to pay the amount equitably due from him upon a proper assessment, but did not offer to pay any certain sum. The complaint then avers that plaintiff is ready and willing to quitclaim and convey to defendant all interest acquired by him at the several purchases aforesaid in said property of defendant, upon the receipt of said sum of $500 and interest or such sum as is equitably chargeable against defendant, with costs of this suit; that before the commencement of this action he caused to be served on defendant a notice requiring him to pay his proportion of said moneys, viz., a certain sum in said notice named or such sum as should be just; and that defendant has not paid the same nor any part thereof. Prayer that said defendant be adjudged to pay the plaintiff said sum of $500, or such sum as, upon proof, shall be properly chargeable against him, and interest thereon from April 12, 1862, together with costs of this action, or that the title to the lands held and those conveyed with covenants of warranty by said *Brooks* as above stated, and covered by said mortgage dated June 2, 1837, be adjudged and declared to be perfect in the plaintiff, and that he have judgment of recovery therefor as against said defendant; and for general relief.

A demurrer to the complaint as not stating a cause of action, was overruled; and the defendant appealed.

*Abbott & Hutchinson,* for appellant, contended that the purchase of the equity of redemption by the plaintiff had never enured to defendant's benefit, and that the foreclosure proceedings are a nullity as to the parties not named. *Bouton*

*v. City of Brooklyn*, 15 Barb., 375; *Reid v. The Evergreens*, 21 How., 319; *Habicht v. Pemberton*, 4 Sandf., 657; *Garner v. Wright*, 24 How., 144; Story's Eq. Pl., 180 et seq.; 1 Van Santv. Pl., 77–78. It appears from the complaint that *Stevens* became owner of the larger part of the equity of redemption, and was not made a party to the action to foreclose. It does not appear but his right may be in hands capable of asserting it. To render the defendant liable on his conditional promise, the foreclosure must have been complete as to the entire mortgage and all the property covered by it, and conclusive upon the whole world.

*Stevens & Lewis*, for respondent, contended, among other things, that *Brooks* became an *actual party by representation* in the foreclosure and injunction suits. The statute (R. S., ch. 122, sec. 20) provides that " when the question is one of a common or general interest of many persons, or when the parties are very numerous, and it may be impracticable to bring them all before the court, one or more may sue or defend *for the benefit of the whole.*" A like rule had already been established by the courts in equity cases. Edwards on Parties, 5; 8 Wheat., 451, note (*a*); *West v. Randall*, 2 Mason, 192–99. The statute which thus permits a person's rights to be adjudicated without making him a formal party to the action, does not deny him his " day in court," but simply prescribes *a mode of representation.* The many, as unnamed parties, are represented by the one or more, acting parties; the latter being trustees for the former. 2. Whether this be so or not, it is certain that the property interests of the unnamed parties in such suits are bound by the proceedings therein. Edwards on Parties, 5; 2 Mason, 192–99; *Hallett v. Hallett*, 2 Paige, 18; *Bouton v. City of Brooklyn*, 15 Barb., 390. Since the statute, the rule applies to actions *at law*, and to *defendants* as well as plaintiffs. *Habicht v. Pemberton*, 4 Sandf., 659; 1 Til. & Shear. Pr., 461,

462; *Kirk v. Young*, 2 Abb., 453; *Greene v. Breck*, 10 id., 42; *Reid v. Evergreens*, 21 How., 320; 1 Daniell's Ch. Pr., 235; Story's Eq. Pl., §§ 114–137; *McKinzie v. L'Amoreux*, 11 Barb., 516; *Brown v. Ricketts*, 3 Johns. Ch., 553; *Thompson v. Brown*, 4 id., 619; *Ross v. Crary*, 1 Paige, 416; *Dennis v. Kennedy*, 19 Barb., 518; *Mead v. Mitchell*, 5 Abb., 92 (17 N. Y., 210). 3. This rule applies to the injunction and foreclosure suits mentioned in the complaint. In order that one or more of Noonan's grantees might foreclose the mortgage or restrain Noonan from foreclosing it, it was necessary to make parties, by representation or otherwise, all persons having an interest in the mortgage security. *Stevens v. Campbell*, 13 Wis., 375; 1 Daniell's Ch. Pr., 205, 235; Edwards on Parties, 10, 12, 87. In both of those actions the court held that the rule did apply, and the decision cannot be called in question in a collateral suit. Again, the complaint alleges the existence in those cases of the facts required by the statute for the application of the rule; and the demurrer admits the allegation. 4. Courts compel persons not made parties to suits *by name*, when benefited by them, to pay their proportion of the costs and expenses. In some cases it has been held that *assumpsit* would lie, a promise being implied from the resulting benefit. The more usual cases are those in which, upon the distribution of the fund realized, the costs and expenses are first paid, thus collecting out of the share of each of the unnamed parties his proportion of such costs and expenses. *Hood v. Wilson*, 2 Russ. & M., 687 (13 Eng. Ch., 230); *Tootal v. Spicer*, 4 Sim., 510 (6 Eng. Ch., 231); *Larkins v. Paxton*, 2 M. & K., 320 (8 Eng. Ch., 15); *Barker v. Wardley*, 2 id., 818 (8 Eng. Ch., 244); *Edenboro v. Carter*, 2 Russ., 93 (3 Eng. Ch., 45); *Hall v. Laver*, 1 Hare, 571 (23 Eng. Ch., 571); *Mohun v. Mohun*, 1 Swans., 201; 2 Barb. Ch. Pr., 337–38, 313; *Crandall v. Hoysradt*, 1 Sandf. Ch., 40; R. S., 142, sec. 68.

In the case at bar, the active parties have realized a fund. By the proceedings adopted a perfect title to all the property claimed by Noonan's grantees is vested in the attorney, the plaintiff here. It is competent for *Brooks* to claim that the title to his property is held by the plaintiff in trust; but does not the property in the hands of the trustee stand charged with the expense of the proceedings by which a perfect title was secured for the *cestuis que trust?* *Currie v. Cowles*, 6 Bosw., 452; Hill on Trustees, 847; 19 Ala., 675. 5. The *promise* of *Brooks* to pay is sufficiently shown by the complaint. If *Brooks* elects not to regard *Stevens* as a trustee, the title to the property vests in *Stevens*, and *Brooks* becomes entitled to receive from the sheriff his proportion of the moneys bidden at the foreclosure sale; or he may trust to some defense arising outside of the matters stated in the complaint to resist *Stevens's* right of possession. The complaint is sufficient in ejectment.

DIXON, C. J. Assuming that the grantees of Noonan became assignees of the mortgage in proportion to the value of the land attempted to be conveyed to each, and that the actions by Farwell, Roby and others, against Noonan, Roys and others, were properly commenced as well in behalf of all other persons interested and not named as of the plaintiffs named, still I think that the complaint states no cause of action. I think the plaintiff altogether mistakes the true relation of the persons not named to the actions which were thus commenced in their behalf. He seems to suppose that they were real parties to the action, and bound to bear their proportion of the expenses of the litigation, whether they assented to the proceedings and came in under the judgment, or not. In other words, he seems to think it competent for the plaintiffs named, who commenced and carried on the litigation without the knowledge or consent of

those not named, to compel the latter, against their will, to accept the benefit of the proceedings, and to share the expenses. This is an entire mistake. The persons not named in such cases are not parties to the suit, unless they afterwards elect to come in and claim as such, and bear their proportion of the expenses. It is optional with them whether they will become parties or not; and until they so elect, they are, in the language of the books, "in a sense, deemed to be before the court." Story's Eq. Pl. (Redfield's edition), § 99; *Adair v. The New River Company,* 11 Ves., 444. They are so far before the court that if they neglect, after a reasonable notice to them for that purpose, to come in under the judgment and establish their claims, the court will protect the defendants and parties named from any further litigation in respect to the same fund or subject matter, especially so far as such litigation may tend to disturb the rights of the parties as fixed by the judgment. The whole doctrine of the court of equity upon the subject is so fully and clearly expounded by Chancellor WALWORTH in *Hallett v. Hallett,* 2 Paige, 18, and by Lord ELDON in *Good v. Blewit,* 19 Ves., 336, that a reference to other authorities is deemed unnecessary. The practice in actions of that kind, of permitting, and, in most cases, of requiring the plaintiff to sue not only in his own behalf but also in behalf of all others interested, was adopted so as to conform as nearly as possible to the general rule in courts of equity as to parties, which is, that all persons materially interested in the subject-matter ought to be made parties to the suit, either as plaintiffs or as defendants, however numerous they may be, in order that complete justice may be done and multiplicity of suits prevented; but as that rule was sometimes found incapable of application, either because the parties were so numerous as to render it impracticable to bring them all by name before the court, or were unknown, or without the

jurisdiction of the court, exceptions became necessary that the rule, established for the convenient administration of justice, might not destroy the very purpose for which it was established. "The exceptions, therefore," says Judge STORY, *supra*, § 96, "turn upon the same principle upon which the rule is founded. They are resolvable into this, either that the court must wholly deny the plaintiff the equitable relief to which he is entitled, *or that the relief must be granted without making other persons parties.* The latter is deemed the least evil, whenever the court can proceed to do justice between the parties before it, without disturbing the rights or injuring the interests of the absent parties, who are equally entitled to protection. And even in the cases in which the courts will thus administer relief, so solicitous is it to attain the purposes of substantial justice, that it will generally require the bill to be filed, not only in behalf of the plaintiff, but also in behalf of all other persons interested, *who are not directly made parties* (although in a sense they are thus made so), so that they *may* come in under the decree, and take the benefit of it, or show it to be erroneous, or entitle themselves to a rehearing." This is the extent of the exceptions to the general rule; so that, instead of being a mode of making the persons not named parties to the suit, unless they come in under the judgment, or before judgment, as they may do, and take the benefit of it, it is in reality a mode of *dispensing with* the presence of such persons before the court, and of rendering a final judgment without them; and unless they do come in and take the benefits, in which case they become parties and are chargeable like the others, I know of no principle or authority upon which they can be charged with any part of the expenses of the litigation. I think, therefore, that the complaint is defective in not alleging that the defendant *Brooks* did come in, and did accept the benefits

of the proceedings in the two actions named in the complaint. Without some such facts, which of course must be averred, there was no consideration for the promise alleged to have been made by him to the plaintiff.

Besides, the condition of the promise which was made, has never been fulfilled. That condition was, " that in case he should be protected in his interests correspondingly with the other plaintiffs and parties interested, by the said action and measures begun and taken, he would pay his proportionate share of the outlays and expenses necessary thereto." Whether the defendant should be protected in his interests or not, depended on whether he should come in and become a party to the action, which was a matter entirely optional with himself. Having refused to come in, he has received no protection, but is debarred from all rights under the judgment; and the condition upon which he was to pay has failed.

I think, therefore, that the demurrer to the complaint should have been sustained, and that the order of the court below must be reversed.

*By the Court.*—Order reversed.

The plaintiff moved for a rehearing.

DIXON, C. J. On motion for a rehearing it is contended, *First*, that it already sufficiently appears by the complaint that the defendant did come in and accept the benefit of the foreclosure judgment before this action was commenced. We do not think so. What is meant by coming in and accepting the benefit of the judgment, or claiming under it, in such cases? Obviously, that the person previously unknown or not named shall appear before the court in which judgment is rendered, and shall connect themselves with the action as actual parties of record. This is done by

order after judgment, made in pursuance of directions contained in the judgment for that purpose. The order is obtained upon the application of the parties so previously unknown or not named. It is usually, and we suppose always, preceded by an order of reference to a master or commissioner to examine and report as to the identity and interest of the persons so applying, which is a very important matter yet to be judicially ascertained and settled, notwithstanding formal judgment has already been entered. See *Farrell v. Smith*, 2 Ball & Beatty, 169; and *Anonymous*, 9 Price, 210.

*Secondly*, it is contended, though the facts pleaded are not sufficient to charge the defendant, as a party to the foreclosure action, with a proportion of the costs and expenses, yet that enough is stated to authorize a recovery, as in ejectment, of that part of the mortgaged premises claimed and occupied by the defendant; or if not that, a redemption from the lien of the mortgage to the extent of the defendant's interest. As purchaser at the foreclosure sale, the plaintiff claims to have acquired title to the whole mortgaged premises; and as the grantee of Rogers and James, and (through them, by the intermediate conveyances) of Field and Ford, he likewise claims the equity of redemption in so much and such parts of the mortgaged premises as were not affected by the foreclosure proceedings. Upon these propositions it is unnecessary for us to express any opinion, since it so clearly appears from the entire language of the complaint, that the sole object of this action is to recover from the defendant his alleged share of the costs and expenses of the foreclosure proceedings, and of the other steps taken to perfect the title. It cannot be regarded either as an action of ejectment or as a suit in the nature of a bill to redeem. Whether, as is suggested, the complaint can be so amended as to transform it into one or the other

of those actions, it would be improper for us now to say. There is no motion before us for that purpose; and if there was, it would probably be rejected, as the uniform practice of this court has been not to entertain such applications. The circuit court has the same power to direct or allow amendments as this court, and the course of proceeding is to remand the cause and let the amendments, if any, be made by direction of that court.

*By the Court.*—The motion for a rehearing is denied.